## A90A1207. EDENS v. THE STATE.
(397 SE2d 612)

SOGNIER, Judge.

Tommy Edens was convicted at a bench trial of misdemeanor theft by taking, and he appeals.

Vicki and Todd Stephens testified that they purchased a Yamaha motorcycle from appellant, paying him $300 and entering into a verbal agreement that the balance of $300 would be paid within six months but that there was no regular schedule of payments. The couple testified that approximately six weeks later, appellant called them and asked to borrow the motorcycle until his own vehicle had been repaired. According to the Stephenses, at the time of the phone call and at the time appellant got the motorcycle no mention was made about appellant needing to be paid more money for the motorcycle. However, two weeks later when the couple contacted appellant, he informed them he had repossessed the motorcycle for lack of payment. Vicki Stephens testified that after several demands on appellant for either the return of the motorcycle or refund of the $300 downpayment, appellant told them he would refund them the downpayment as soon as he sold his car. She acknowledged that the motorcycle had been damaged while in their possession, but stated the damage was minor, and that Todd Stephens had offered to pay for the damage in exchange for the refund. Todd Stephens testified that appellant told him he would refund the $300, but other than a check for $10 proffered to him by appellant at work on the day Vicki Stephens obtained a warrant for appellant's arrest, he had received no repayment. Todd Stephens responded negatively when asked by the trial judge, "[i]n point of time, was [the check proffered by appellant] after the warrant had been served on him?" No other evidence addressed the question whether appellant's payment to Todd Stephens was made before or after the warrant was served.

Appellant testified that motorcycles were his hobby, but that although he had bought and sold several motorcycles, he had financed only the very first motorcycle he had purchased. Appellant stated that Todd Stephens, a high school friend, approached him about buying his motorcycle. Appellant accepted payments of $200 one week and $100 the following week, then allowed Todd to take possession of the motorcycle. Appellant testified they agreed that the Stephenses would pay him $25 a week until the balance of $300 was paid. Appellant stated he told Todd that another person held a security interest on the motorcycle and that Todd could pay the $25 weekly amount either to appellant or directly to the holder of the security interest. After several weeks during which he received no payments from the Stephenses, appellant testified he called Todd, told him he needed either the money or the motorcycle, and was told by Todd "to come

pick it up." At a meeting two weeks after he got the motorcycle, appellant testified he and Todd agreed that appellant would refund what was left of the $300 downpayment after paying for repairs to the motorcycle. Appellant said he spoke to Todd Stephens several times after this agreement when Todd came by appellant's work place to inquire about the estimates appellant had received on the repair of the bike. He stated that the day after Todd called him asking him about the money, he gave Todd the check for $10, which was accepted with thanks.

Appellant contends the trial court erred by finding him guilty of theft by taking because the trial court improperly based its judgment on the fact that appellant had not perfected a security interest in the motorcycle. The transcript reveals that after the close of the evidence, the trial judge stated that "if you don't perfect a security interest, you don't have the right to repossess. . . . If someone sells something to someone, and takes back a security interest, they have to do what the UCC, Uniform Commercial Code requires, . . . you perfect a security interest, . . . [and] if someone doesn't pay, you can go take it back, and you are not violating the law, it's called self-help, and it's a very important part of our law, and I have seen that, people follow it and use it. I wish [appellant] had done that . . . . I'm convinced beyond a reasonable doubt that [appellant] sold a motorcycle to [the Stephenses]. He took $300 for that motorcycle. He may have had an agreement that [the Stephenses] pay $25 a week, but unless he perfected a security interest, he doesn't have a right to take it back. . . . He can't have the motorcycle and the $300. . . . I wish he had perfected a security interest. . . . [H]e has clearly taken something he sold to somebody, and he's taken it back, and yet he didn't give [them] their money back, and as much as I hate to find that, I'm convinced beyond a reasonable doubt that this happened."

We reverse. OCGA § 16-8-2 provides that "[a] person commits the offense of theft by taking when he unlawfully takes or, being in lawful possession thereof, unlawfully appropriates any property of another with the intention of depriving him of the property." The statements above indicate that the trial court did not believe the Stephenses' testimony that appellant had obtained the motorcycle by a ruse, but instead believed appellant's testimony that he had taken back the motorcycle for the Stephenses' failure to make the weekly payments on the machine. Since the credibility of witnesses is solely a question for the trier of fact, *Boose v. State*, 185 Ga. App. 728 (365 SE2d 534) (1988), we must accept the trial court's finding in this regard. However, because the trial court did not credit the Stephenses' testimony, it thus appears that the trial court's judgment of guilt was not based on appellant taking the motorcycle with the criminal intent to deprive the Stephenses of the machine, but rather was based on

appellant repossessing the motorcycle without having followed steps the trial court deemed necessary to perfect a security interest in the machine under the UCC. Even assuming, without deciding, that the method appellant used to reclaim the motorcycle was legally deficient, the evidence as found by the trial court nonetheless establishes that appellant did not possess the requisite criminal intent when he took the motorcycle, since he was acting on what he thought was an honest claim of right to the property or to acquire the property as he did. See OCGA § 16-8-10 (2).

"[T]he guilt of the accused depends upon the intent with which the act was committed, and intent is a material ingredient of the crime. [Cit.]" *Scott v. State*, 46 Ga. App. 213, 217 (167 SE 210) (1932). Based on the trial court's findings that appellant did not possess the criminal intent necessary for theft by taking, in that his intent was to repossess an item under an honest claim of right after the purchasers defaulted on their payments, we must reverse the judgment.

*Judgment reversed. Carley, C. J., and McMurray, P. J., concur.*

DECIDED OCTOBER 3, 1990.

*Clifford S. Lancey*, for appellant.
*Roger G. Queen, District Attorney, J. L. Floyd, Assistant District Attorney*, for appellee.