COURT
OF APPEALS

                                       SECOND
DISTRICT OF TEXAS

                                                   FORT
WORTH

 

 

                                        NO.
2-08-039-CR

 

 

CASEY J. MOORE                                                               APPELLANT

 

                                                   V.

 

THE STATE OF TEXAS                                                               STATE

 

                                              ------------

 

           FROM THE 396TH
DISTRICT COURT OF TARRANT COUNTY

 

                                              ------------

 

                                MEMORANDUM OPINION[1]

                                                    

                                              ------------

                                           I.
INTRODUCTION

In two points, appellant Casey J. Moore appeals
his conviction for theft of property with a value of more than $1,500 but less
than $20,000, arguing that the evidence at trial was both legally and factually
insufficient to sustain the conviction. 
We will affirm.








                                          II.
BACKGROUND

Moore=s
grandmother, Eloise Parmes, received widow=s
benefits from the Department of Veteran=s
Affairs (AVA@).  The VA directly deposited $935 per month into
a Bank of America checking account held jointly by Mrs. Parmes and Moore.  The direct deposits from the VA were the only
deposits made into this joint checking account. 
By law, Mrs. Parmes=s widow=s
benefits were to cease upon her death.

Mrs. Parmes died on November 18, 2002.  No one informed the VA of her death, and for
approximately a year and a half the VA continued to directly deposit the
benefits into the joint checking account. 
The VA deposited a total of $15,212 into Mrs. Parmes=s and
Moore=s joint
account between the time of her death and the termination of the account.  After Mrs. Parmes=s death,
Moore wrote checks totaling $14,100 from the joint checking account to Texas
Express Movers, a business owned by him and his wife.








The VA eventually learned of Mrs. Parmes=s death
and ceased making the benefit payments. 
The VA then began an investigation into the benefits it had paid after
Mrs. Parmes=s death that were no longer in the
joint account.  During that
investigation, Moore informed Agent Bryan Sewell that Mrs. Parmes had told him
that he could use the benefit payments to pay for moving and storing her
household goods.  Moore claimed that he
wrote checks from the joint checking account to Texas Express Movers and used
cash or credit cards to pay a third party moving company, Deluxe Movers, to
move and store Mrs. Parmes=s
belongings.  Texas Express Movers paid
$2,000 to Deluxe Movers between the time of Mrs. Parmes=s death
and the termination of the joint checking account.

Following the investigation, Moore was indicted
for theft of property from Agent Sewell.[2]  A jury found Moore guilty of theft of more
than $1,500 but less than $20,000.  The
trial court assessed his punishment at two years=
confinement, probated for five years, and $13,329 in restitution.  This appeal followed.

    III.  LEGALLY & FACTUALLY SUFFICIENT EVIDENCE
TO SUPPORT A FINDING
OF GUILT[3]

In his first and second points, Moore argues that
the evidence at trial was legally and factually insufficient to support the
jury=s
finding that he intended to unlawfully appropriate the money deposited by the
VA into the joint checking account.








                                               A.
THEFT

Under Texas law, a theft is committed when a
person unlawfully appropriates property with intent to deprive the owner of
that property.  Tex. Penal Code Ann. ' 31.03(a)
(Vernon Supp. 2008); Peterson v. State, 645 S.W.2d 807, 811 (Tex. Crim.
App. 1983).  Appropriation of property is
unlawful when it is without the owner=s
effective consent.  Tex. Penal Code Ann. ' 31.03(b)(1).  AAppropriate@ means
to acquire or otherwise exercise control over property other than real
property.  Id. '
31.01(4)(B).  ADeprive@ means
to withhold property from the owner permanently or for so extended a period of
time that a major portion of the value or enjoyment is lost to the owners.  Id. '
31.01(2)(A).  AEffective
consent@
includes consent by a person legally authorized to act for the owner.  Id. '
31.01(3).








For a person to act with intent, it must be his
conscious objective or desire to engage in a particular conduct or a particular
result.  Id. ' 6.03(a)
(Vernon 2003).  Intent is most often
proved through the circumstantial evidence surrounding the crime, rather than
through direct evidence.  Hernandez v.
State, 819 S.W.2d 806, 810 (Tex. Crim. App. 1991), cert. denied, 504
U.S. 974.  In determining whether the
defendant had criminal intent to commit theft, we may consider whether the
defendant experienced personal gain from the property obtained from the
owner.  See Christensen v. State,
240 S.W.3d 25, 32 (Tex. App.CHouston
[1st Dist.] 2007, pet. ref=d);
King v. State, 17 S.W.3d 7, 17 (Tex. App.CHouston
[14th Dist.] 2000, pet. ref=d)
(noting that evidence that King had criminal intent was shown in part by his
use of complainant=s money for sole purpose of
paying personal expenses and purchasing items for personal benefit).

                                 B.
LEGALLY SUFFICIENT EVIDENCE

                                     1.
Standard of Review

In reviewing the legal sufficiency of the
evidence to support a conviction, we view all of the evidence in the light most
favorable to the prosecution in order to determine whether any rational trier
of fact could have found the essential elements of the crime beyond a
reasonable doubt.  Jackson v. Virginia,
443 U.S. 307, 319, 99 S. Ct. 2781, 2789 (1979); Clayton v. State, 235
S.W.3d 772, 778 (Tex. Crim. App. 2007).








This standard gives full play to the
responsibility of the trier of fact to resolve conflicts in the testimony, to
weigh the evidence, and to draw reasonable inferences from basic facts to
ultimate facts.  Jackson, 443 U.S.
at 319, 99 S. Ct. at 2789; Clayton, 235 S.W.3d at 778.  The trier of fact is the sole judge of the
weight and credibility of the evidence.  See
Tex. Code Crim. Proc. Ann. art. 38.04 (Vernon 1979); Brown v. State, 270
S.W.3d 564, 568 (Tex. Crim. App. 2008). 
Thus, when performing a legal sufficiency review, we may not re-evaluate
the weight and credibility of the evidence and substitute our judgment for that
of the factfinder.  Dewberry v. State,
4 S.W.3d 735, 740 (Tex. Crim. App. 1999), cert. denied, 529 U.S. 1131
(2000).  Instead, we Adetermine
whether the necessary inferences are reasonable based upon the combined and
cumulative force of all the evidence when viewed in the light most favorable to
the verdict.@ 
Hooper v. State, 214 S.W.3d 9, 16B17 (Tex.
Crim. App. 2007).  We must presume that
the factfinder resolved any conflicting inferences in favor of the prosecution
and defer to that resolution.  Jackson,
443 U.S. at 326, 99 S. Ct. at 2793; Clayton, 235 S.W.3d at 778; see
also Matson v. State, 819 S.W.2d 839, 846 (Tex. Crim. App. 1991) (resolving
conflicting inferences concerning appellant=s intent
in favor of prosecution).

                   2.
Legally Sufficient Evidence of Intent to Deprive








Here, Moore transferred approximately $15,000
from the joint checking account into an account for his business, Texas Express
Movers.  Although Moore told Agent Sewell
that he then used the funds to pay Deluxe MoversCusing
cash and credit cardsCto move and store his
grandmother=s household items, the evidence showed
that he paid Deluxe Movers only $2,000, leaving approximately $13,000 of the
monies Moore took unaccounted for by this explanation.  The record reflects that Moore spent funds
from the Texas Express Movers account at various establishments, including a
pub, grocery stores, and restaurants.

Moore argues that the State failed to prove that
he appropriated the property with the requisite intent because Mrs. Parmes gave
him permission to use the funds to move and store her goods.  But by law after Mrs. Parmes died she was not
entitled to receive and did not own any of the VA benefits deposited into the
joint checking account.[4]  Agent Sewell testified that he was the de
facto owner of all VA funds deposited in the joint checking account following
the death of Mrs. Parmes.  And no
evidence exists that Moore at any point acquired the effective consent of either
the VA or Agent Sewell to take the VA widow=s
benefits deposited in the joint checking account.  He simply removed the funds from the joint
checking account and deposited them into his own business account.

Moore also contends that he did not know he had a
duty to inform the VA of Mrs. Parmes=s death
and did not know that he was not entitled to spend the VA funds after her
death.  Consequently, he argues that
these mistakes of fact negated the requisite mental state for theft.








Mistake-of-fact instructions were included in the
jury charge.  The jury was instructed
that Ait is a
defense to prosecution that a person through mistake formed a reasonable belief
about a matter of fact if his mistaken belief negated the kind of culpability
required for commission of the offense charged.@  The jury charge also included an application
paragraph on mistake of fact and instructed the jury to find Moore not guilty
if they found that Moore, Athrough
mistake, formed a reasonable belief that he was entitled to receive and
disburse monies received, if any, from the Veteran=s
Administration.@








Whether Moore=s
purported mistake of fact was reasonable and negated the requisite criminal
intent was for the jury to decide.  See
Granger v. State, 3 S.W.3d 36, 39 (Tex. Crim. App. 1999); see also
Winkley v. State, 123 S.W.3d 707, 712 (Tex. App.CAustin
2003, no pet.).  Although Moore claimed a
purported mistake of fact and offered an explanation for his conduct, the jury
was not required to believe him.  See
Saxton v. State, 804 S.W.2d 910, 912B14 (Tex.
Crim. App. 1991).  The jury could have
reasonably concluded that an ordinary and prudent person in Moore=s
position would have understood that he was not entitled to his deceased
grandmother=s widow=s
benefits from the VA.  See Winkley,
123 S.W.3d at 712; Bang v. State, 815 S.W.2d 838, 841 (Tex. App.CCorpus
Christi 1991, no pet.).  The jury could
have inferred that Moore possessed the specific intent to commit theft based on
the facts that he never informed the VA of his grandmother=s death,
never applied to receive her benefit funds, and removed the entirety of those
funds from her account and placed them in his own business account.  See Coronado v. State, 508 S.W.2d 373,
374 (Tex. Crim. App. 1974) (ASpecific
intent to commit theft can be inferred from the surrounding circumstances.@); Ellis
v. State, 877 S.W.2d 380, 383 (Tex. App.CHouston
[1st Dist.] 1994, pet. ref=d).

Viewing all of the evidence in the light most
favorable to the prosecution and resolving all conflicting inferences in favor
of the prosecution, we hold that a rational trier of fact could have found the
essential elements of theft of more than $1,500 but less than $20,000 beyond a
reasonable doubt, including that Moore intended to deprive the VA of its funds
and that Moore=s explanation for his actions
was merely part of a ruse to accomplish the theft.  See Tex. Penal Code Ann. ' 31.03(a);
Jackson, 443 U.S. at 319, 99 S. Ct. at 2789; Clayton, 235 S.W.3d
at 778; Matson, 819 S.W.2d at 846.

           C.  FACTUALLY SUFFICIENT EVIDENCE
TO SUPPORT A FINDING
OF GUILT

                                     1.  Standard of Review








When reviewing the factual sufficiency of the
evidence to support a conviction, we view all the evidence in a neutral light,
favoring neither party.  Neal v. State,
256 S.W.3d 264, 275 (Tex. Crim. App. 2008), cert. denied, 129 S. Ct.
1037 (2009); Watson v. State, 204 S.W.3d 404, 414 (Tex. Crim. App.
2006).  We then ask whether the evidence
supporting the conviction, although legally sufficient, is nevertheless so weak
that the factfinder=s determination is clearly wrong
and manifestly unjust or whether conflicting evidence so greatly outweighs the
evidence supporting the conviction that the factfinder=s
determination is manifestly unjust.  Lancon
v. State, 253 S.W.3d 699, 704 (Tex. Crim. App. 2008); Watson, 204
S.W.3d at 414B15, 417.  To reverse under the second ground, we must
determine, with some objective basis in the record, that the great weight and
preponderance of all the evidence, though legally sufficient, contradicts the
verdict.  Watson, 204 S.W.3d at
417.








In determining whether the evidence is factually
insufficient to support a conviction that is nevertheless supported by legally
sufficient evidence, it is not enough that this court Aharbor a
subjective level of reasonable doubt to overturn [the] conviction.@  Id. 
We cannot conclude that a conviction is clearly wrong or manifestly
unjust simply because we would have decided differently than the jury or
because we disagree with the jury=s
resolution of a conflict in the evidence. 
Id.  We may not simply
substitute our judgment for the factfinder=s.  Johnson v. State, 23 S.W.3d 1, 12
(Tex. Crim. App. 2000); Cain v. State, 958 S.W.2d 404, 407 (Tex. Crim.
App. 1997).  Unless the record clearly
reveals that a different result is appropriate, we must defer to the jury=s
determination of the weight to be given contradictory testimonial evidence
because resolution of the conflict Aoften
turns on an evaluation of credibility and demeanor, and those jurors were in
attendance when the testimony was delivered.@  Johnson, 23 S.W.3d at 8.  Thus, unless we conclude that it is necessary
to correct manifest injustice, we must give due deference to the factfinder=s
determinations, Aparticularly those
determinations concerning the weight and credibility of the evidence.@  Id. at 9.  Our deference in this regard safeguards the
defendant=s right to a trial by jury.  Lancon, 253 S.W.3d at 704.

An opinion addressing factual sufficiency must
include a discussion of the most important and relevant evidence that supports
the appellant=s complaint on appeal.  Sims v. State, 99 S.W.3d 600, 603
(Tex. Crim. App. 2003).  Moreover, an
opinion reversing and remanding on factual insufficiency grounds must detail
all the evidence and clearly state why the finding in question is factually
insufficient and under which ground.  Goodman
v. State, 66 S.W.3d 283, 287 (Tex. Crim. App. 2001); Johnson, 23
S.W.3d at 7.

                 2.  Factually Sufficient Evidence of Intent to
Deprive








Viewing the evidence in a light neutral to both
parties, our review of the record reveals the following relevant evidence
potentially supporting Moore=s
complaint of factual insufficiency.  See
Sims, 99 S.W.3d at 603.  Moore
asserted in his written statement[5]
that he spent some of the VA funds on packing and moving Mrs. Parmes=s belongings,
that he did not know he was not entitled to the money, that he did not use the
money for personal gain, and that he was not aware that he was doing anything
wrong.  The general manager at Deluxe
Movers testified that Moore stored more than one household worth of furniture
at Deluxe Movers= storage facility.  Further, the general manager admitted that
Deluxe Movers does not properly document every payment made to his company and
that Moore could have paid the company more than the $2,000 reflected by
company records and receipts.

Regarding Moore=s
mistaken entitlement to the VA funds, the evidence demonstrates that over a
year before Mrs. Parmes died, Moore=s name
was added to the joint checking account.








Conversely, the following facts contained in the
record support the jury=s finding that Moore
misappropriated the VA funds with the intent to deprive the owner of the
funds.  See Tex. Penal Code Ann. ' 31.03(a).  Moore never contacted the VA to inform them
that Mrs. ParmesCthe only eligible beneficiary of
the VA funds and the only person to whom any physical check would have been
madeChad
passed away.  During his investigation
into the missing funds, Agent Sewell learned that Moore had transferred the
funds from the joint checking account into his business account for Texas
Express Movers.  Although Moore claimed
he used these funds to move and store his grandmother=s
belongings, the evidence showed that Moore paid Deluxe Movers $2,000 from his
business account.  The list of businesses
that received payments from Texas Express Movers= account
did not include any businesses other than Deluxe Movers where household goods
reasonably could have been stored.








In reviewing the above evidence in a manner
favoring neither Moore or the State, we do not believe that the evidence is so
weak as to Moore=s intent that the jury=s
determination is clearly wrong and manifestly unjust.  See Lancon, 253 S.W.3d at 704.  Further, the evidence presented by Moore at
trial to counter the State=s
accusation was not of such gravity as to greatly outweigh the evidence
supporting the conviction.  See Watson,
204 S.W.3d at 417.  The jury determined
to accept the State=s version of events over Moore=s.  We believe that our evaluation on appeal Ashould
not substantially intrude upon the jury=s role
as the sole judge of the weight and credibility of witness testimony.@  Santellan v. State,939 S.W.2d 155, 164
(Tex. Crim. App. 1997).

Because the record does not clearly reveal that a
different verdict is appropriate, we defer to the determination of the jury as
to issues of credibility and contradictory testimonial evidence.  See Johnson, 23 S.W.3d at 8.  Consequently, we hold that the evidence is
factually sufficient to sustain Moore=s
conviction.  We overrule Moore=s second
point.

                                          IV.  CONCLUSION

Having overruled both of Moore=s points
on appeal, we affirm the judgment of the trial court.

 

SUE
WALKER

JUSTICE

 

PANEL: DAUPHINOT,
GARDNER, and WALKER, JJ.

 

DO NOT PUBLISH

Tex. R. App. P. 47.2(b)

 

DELIVERED: July 9, 2009











[1]See Tex. R. App. P. 47.4.





[2]To show corporate
ownership, it is sufficient to allege ownership in the employee who has care,
custody, and control of the property, the Aspecial owner.@  Harrell
v. State, 852 S.W.2d 521, 523 (Tex. Crim. App. 1993).





[3]In his brief, Moore
combines his legal and factual sufficiency claims into a single
discussion.  We will address them
separately.  See Laster v.
State, 275 S.W.3d 512, 519 (Tex. Crim. App. 2009) (holding that appellate
courts may not combine legal and factual sufficiency analyses).





[4]See 38 U.S.C. ' 5301(a)(1) (West
Supp. 2009) (providing that benefits from the VA are generally non-assignable).





[5]The handwritten statement
introduced at trial as State=s Exhibit 6 was written by Agent Sewell during
his interview with Moore.  Agent Sewell
consulted with Moore while writing it and later made a minor wording change to
its contents at Moore=s request.  Moore later declined to sign the statement.